# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN H. BRYANT JR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-15-245-CG |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff John H. Bryant Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff filed his applications for DIB and SSI in June and July of 2011, alleging disability beginning on June 16, 2011. R. 15, 120-34, 142. Following denial of his applications initially and on reconsideration, a hearing was held before an administrative law judge ("ALJ") on September 12, 2013. R. 28-69, 74-79. In addition to Plaintiff, a

vocational expert testified at the hearing. R. 28-55. The ALJ issued an unfavorable decision on October 25, 2013. R. 15-27.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 16, 2011. R. 17. At step two, the ALJ determined that Plaintiff had the severe impairments of: degenerative disc disease of the cervical spine; status post lumbar fusion; and obesity. R. 17-18. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 18.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 18-25. The ALJ found that Plaintiff had the RFC to perform sedentary work subject to certain limitations:

> [Plaintiff] is able to occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds. [Plaintiff] is able to stand and/or walk thirty to forty-five minutes continuously, and for less than six hours in an eight-hour workday. The claimant is able to sit thirty to forty-five minutes continuously, and for at least six hours in an eight-hour workday. He is able to push and/or pull no more than from ten to fifteen pounds, he is no more than occasionally able to climb, balance, stoop or kneel, and he is never able to crouch and never crawl. This is all with normal breaks.

R. 18-19. The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. R. 25.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 25-26. Relying upon the vocational expert's testimony regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform unskilled, sedentary occupations such as optical goods assembler, touch-up screener, and clerical mailer, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 26. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 26.

Plaintiff's request for review by the Appeals Council was denied. R. 1-4. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s]

the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, it may not itself reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

On appeal, Plaintiff raises several challenges to the denial of benefits. Because remand is warranted based upon the ALJ's failure to properly evaluate the medical opinion of Plaintiff's treating physician, the Court does not reach Plaintiff's additional propositions of error, which "may be affected by the ALJ's treatment of this case on remand." *See* Pl.'s Br. (Doc. No. 16) at 8-29;[1] *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A. *The Relevant Record*

Plaintiff's medical record reflects that he received treatment for his back condition from neuroscience specialist Brent Hisey, MD, multiple times during the relevant disability period. *See* R. 274-313, 318-40, 356-68. Plaintiff was first referred to Dr. Hisey in February 2012. At that time Dr. Hisey reviewed Plaintiff's history and older MRI reports of Plaintiff's lumbar and cervical spine and stated that he planned to proceed with lumbar discography "to clarify his pain generating mechanism and then decide if

---

[1] With the exception of the administrative record, references to documents electronically filed by the parties use the page numbers assigned by the Court's ECF system.

4

there is something we can do for him from the surgical stand point." R. 275-76; *see also* R. 277-79, 292-95.

On March 1, 2012, Dr. Hisey performed a dye-injection discography on Plaintiff's L3-4 and L4-5; an injection at L5-S1 "could not be accomplished due to collapse of the dis[c] space." R. 274, 289-91, 299-300, 304. A CT scan revealed "[a]nomolous L5-S1 articulation with Bertolotti syndrome and pseudarthroses between the transverse processes of L5 and the sacrum, worse on the left than right." R. 289-91. Dr. Hisey opined that "[f]rom a surgical stand point" Plaintiff "require[d]" an L5-S1 360° disc fusion surgery. R. 274.

Following further testing, Dr. Hisey performed the recommended lumbar fusion surgery on April 19, 2012. *See* R. 284-88, 304-12, 359-68. Both prior to and after the surgery Plaintiff was diagnosed with degenerative lumbar disc disease at L5-S1. R. 306. Dr. Hisey reported on May 9, 2012, that Plaintiff was "doing well" "overall" post-surgery and that his incisions were healing well. R. 318. X-rays taken on that date reflected that the fusion alignment at L5-S1 was straight and that the other vertebrae had straight alignment and intact spacing. R. 330. On July 17, 2012, x-rays showed solid fusion at L5-S1, with "no indication of loss of integrity to the fusion," the disc spacer "solidly incorporated into the opposing vertebral endplates," and "no visible compromise of the spinal canal." R. 329.

On June 17, 2013, Dr. Hisey completed a medical source statement ("MSS") regarding what Plaintiff was still able to do despite his impairment. *See* R. 353-54. There is no indication in the record that Dr. Hisey examined Plaintiff specifically for this

5

MSS or otherwise had seen Plaintiff since July 2012. In the MSS, Dr. Hisey opined that Plaintiff retained the "MAXIMUM CAPACIT[Y]" to:

    5.    **SIT** in a typical 8 hour workday with usual breaks, **TOTAL** hours of:

        [ ] About 6 hours out of an 8 hour workday
        [ ] Less than 2 hours out of an 8 hour workday
        [X] Less than 6 hours out of an 8 hour workday

R. 353.

Dr. Hisey additionally opined:

    7.    Is this patient required to **LIE DOWN** during the normal workday **TO MANAGE PAIN** or other symptoms?

        __X__ Yes     _____ No

R. 354.

*B. The Treating Physician Rule*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c), 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the

matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician is given such weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

*C. Discussion*

In reaching his determination of Plaintiff's RFC, the ALJ briefly summarized Dr. Hisey's 2012 treatment records. R. 21. The ALJ also described the June 17, 2013 MSS in detail, including the sitting limitations and lying-down requirement quoted above. R. 23; *see* R. 353, 354. After outlining the relevant requirements for evaluation of a treating physician's medical opinion, the ALJ stated:

> The undersigned accords Dr. Hisey's opinion significant, but not controlling weight. Neuroscience specialist, Dr. Hisey treated the claimant beginning February 15, 2012. His treatment notes support his opinion. Dr. Hisey reviewed different modes of imaging, examined the claimant, and performed back surgery on the claimant. He treated the claimant post-operatively. The back surgery occurred on April 19, 2012; however, Dr. Hisey recorded the only note of postoperative treatment after discharge from the hospital, shortly after surgery on May 9, 2012. That note indicates that the claimant was overall doing well from L5-S1 360 fusion performed on April 19, 2012. Dr. Hisey's May 9, 2012 letter is consistent with July 17, 2012 x-rays that showed solid fusion at L5-S1 with no indication of loss of integrity of the fusion and the other disc levels were normal.
>
> Again, the undersigned accords significant weight to Dr. Hisey's opinion and adopts the opinion but finds that the claimant is able to sit for at least six hours in an eight-hour day. Dr. Hisey indicated that the claimant was doing well and healing after surgery and an individual who recovers well from spinal surgery should be able to sit through a normal workday, given x-rays showed the fusion solid and other disc levels normal in July 2012. Dr. Hisey further noted that the claimant would be required to lie down during the normal workday to manage pain or other symptoms; however, the record of treatment with Dr. Hisey ended on May 9, 2012 and then does not support this limitation. Again, the claimant was recovering and from his testimony,

8

he is taking pain medications. Dr. Hisey does not specify how often the claimant needs to lie down, but normal work breaks should cover this limitation. The undersigned has incorporated Dr. Hisey's medical opinion into the claimant's residual functional capacity, with exception as indicated.

R. 24 (citing R. 203, 318, 329-30).

Plaintiff objects that the ALJ erred in (i) his rejection of Dr. Hisey's opinion that Plaintiff is able to sit less than 6 hours total in an 8-hour workday; and (ii) his conclusion that no more than normal work breaks are needed to address Dr. Hisey's opinion that Plaintiff is required to lie down during the workday to manage pain or other symptoms. *See* Pl.'s Br. at 12-18.

- *Sitting Restriction*

As detailed above, the ALJ indicated that he rejected the sitting restriction in the June 2013 MSS because he did not believe that Dr. Hisey accounted for improvement in Plaintiff's functioning that the ALJ expected to have occurred upon Plaintiff healing from the April 2012 spinal fusion surgery. The ALJ noted that the spinal surgery appeared to have been successful, as indicated by Dr. Hisey's May 2012 observation that Plaintiff "was doing well and healing," and x-rays taken in July 2012 that "showed the fusion solid and other disc levels normal." R. 24; *see* R. 318, 329, 330. Noting that Dr. Hisey had not examined Plaintiff between the postoperative examination in May 2012 and the MSS in June 2013, the ALJ discounted the MSS's sitting restriction because "an individual who recovers well from spinal surgery should be able to sit through a normal workday." R. 24.

While it was appropriate for the ALJ to *question* whether the MSS was based only on immediate postsurgery observations, the question must be *resolved* not through

speculation but through medical evidence in the record. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis and internal quotation marks omitted); *accord Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *see also Watkins*, 350 F.3d at 1301 (explaining that if an ALJ rejects a treating source opinion, he or she "must then give specific, legitimate reasons for doing so" (internal quotation marks omitted)). The fact that Plaintiff was recovering well soon after surgery does not by itself disprove or discredit his treating physician's specific opinion that Plaintiff was only able to sit for less than six hours per day approximately one year later. Thus, the ALJ's opinion expressly—and improperly—is based on his own speculation about how "an individual" who has had successful spinal fusion surgery "should" be able to function a year later. R. 24; *see McGoffin*, 288 F.3d at 1252.

Moreover, this speculation is not just a basis for the ALJ's rejection of the MSS's sitting restriction but the *exclusive* one. The ALJ references opinions by two state agency consultants, both of whom reviewed Plaintiff's medical records and found that Plaintiff could sit "about 6 hours in an 8-hour workday." R. 24, 226, 273. But the consultants issued their reports in August 2011 and January 2012, respectively—prior to Plaintiff's spinal fusion surgery. *See* R. 232, 273. These opinions do not provide the "contradictory medical evidence" that would properly allow rejection of the sitting restriction in the MSS. *McGoffin*, 288 F.3d at 1252. And neither the ALJ in his decision, nor the Commissioner in

10

her brief, points to any other such evidence. The ALJ erred by rejecting the sitting limitation in Dr. Hisey's MSS on the basis of speculation rather than medical evidence.

The Commissioner argues that any error by the ALJ as to the sitting restriction was harmless because the vocational expert ("VE") "testified that someone even with Dr. Hisey's limitation to sitting 'less than' six hours could still perform the jobs at issue given the sit-stand option the ALJ also included." Def.'s Br. (Doc. No. 20) at 13 (emphasis and citations omitted). However, the hearing testimony on this point is ambiguous. *See* R. 51-53; Pl.'s Br. at 18 (Plaintiff citing the same testimony to support his argument that the ALJ's error is *not* harmless). While the VE did mention a "sit-stand" opinion in the course of his exchange with the ALJ, the hypothetical posed (and ultimately relied on) by the ALJ included, in relevant part, not a sit-stand option but a limitation where the claimant could "sit [c]ontinuously 30 to 45 minutes at least six hours in an eight hour workday." R. 51. The ALJ then posed a second hypothetical in which the aspect of that limitation requiring a total of six hours sitting was removed, but that hypothetical was never squarely answered by the VE. *See* R. 52-53. The ALJ's improper evaluation of Dr. Hisey's sitting restriction cannot be said to be harmless based on this testimony. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (noting that a finding of harmless error may be appropriate when, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted); *cf. Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments

11

cannot constitute substantial evidence to support the Secretary's decision." (alteration and internal quotation marks omitted)).

- *Lying-Down Requirement*

The ALJ likewise failed to properly evaluate Dr. Hisey's opinion that Plaintiff needed to lie down during the workday to manage his pain or other symptoms. *See* R. 24, 354. Although the ALJ initially indicates that he is rejecting this limitation, *see* R. 24, he then appears to adopt it and states that the limitation could be accommodated through "normal work breaks." R. 24; *see also* R. 19 (ALJ specifying in RFC: "This is all with normal breaks.").

There may have been a proper basis in the record for the ALJ to reject Dr. Hisey's opinion to the extent it called for more than normal work breaks. But the approach taken—construing Dr. Hisey's opinion as requiring no more than normal work breaks—is not a reasonable interpretation of Dr. Hisey's express limitation and cannot be upheld without the Court improperly supplying "post-hoc rationalizations" "that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Because the ALJ cites no support for his determination that normal work breaks would "cover" the lying-down requirement imposed by Dr. Hisey, this finding is a "mere conclusion" and unsupported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal quotation marks omitted). The ALJ's error cannot be held harmless, as a reasonable factfinder could find that the necessity for Plaintiff to lie down as contemplated by Dr. Hisey would require an accommodation beyond "normal breaks," and the VE testified that there would be no jobs available to a person who had to take breaks at irregular

times to manage pain or other circumstances. *See* R. 54, 354; *Keyes-Zachary*, 695 F.3d at 1163.

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 24th day of August, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE